IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:16-cr-20390-BB-1

FILED by ___ D.C.
SEP 28 2018
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA. - MIAMI

UNITED STATES OF AMERICA,

    Plaintiff,                               August 8th, 2016
                                              11:06 a.m.

    vs.

GERTI MUHO,

    Defendant.                              Pages 1 THROUGH 16

___

TRANSCRIPT OF SEALED MOTION HEARING
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE

Appearances:

FOR THE GOVERNMENT:   UNITED STATES ATTORNEY'S OFFICE
                            SEAN THOMAS MCLAUGHLIN, AUSA
                            99 Northeast 4th Street, 8th Floor
                            Miami, Florida 33172

FOR THE DEFENDANT:     MICHAEL J. ROSEN, PA
                            MICHAEL J. ROSEN, ESQ.
                            201 S. Biscayne Boulevard, Suite 915
                            Miami, Florida 33131

COURT REPORTER:        Yvette Hernandez
                            U.S. District Court
                            400 North Miami Avenue, Room 10-2
                            Miami, Florida 33128
                            yvette_hernandez@flsd.uscourts.gov

```
 1            (Call to order of the Court, 11:06 a.m.)
 2            COURTROOM DEPUTY:  Calling Case Number 16-20390,
 3   Criminal, United States of America v. Gerti Muho.
 4            Counsel, please state your appearances for the record.
 5            MR. MCLAUGHLIN:  Good morning, Your Honor.  Sean
 6   McLaughlin on behalf of the United States.
 7            MR. ROSEN:  Good morning, Your Honor.  Michael Rosen.
 8            THE DEFENDANT:  Good morning, Your Honor.  Defendant,
 9   Gerti Muho.
10            THE COURT:  Good morning to each of you.
11            Before the Court is Docket Entry 34, Mr. Rosen, your
12   motion for leave to withdraw as counsel and a request for a
13   hearing.
14            MR. ROSEN:  Yes, ma'am.
15            THE COURT:  Would you like Mr. McLaughlin to step
16   outside so that your statements can be made in a candid manner?
17            MR. ROSEN:  I think Mr. McLaughlin would like to, and
18   that's fine with me, yes.
19            THE COURT:  All right.  Mr. McLaughlin, let me ask
20   that you and any member of the United States Attorney's Office
21   will leave the courtroom so the Court can address Mr. Rosen's
22   motion.
23            MR. MCLAUGHLIN:  Certainly, Your Honor.
24            (AUSA Sean McLaughlin exits the courtroom, 11:08 a.m.)
25            THE COURT:  All right.  Mr. Muho, as you can see,
```

```
 1    Mr. McLaughlin has left the courtroom.  There are no
 2    individuals present on behalf of the United States Attorney's
 3    Office and the only members that are present in the courtroom
 4    are myself and my staff.  So certainly you can feel free to
 5    speak candidly with the Court and the Court will order this
 6    portion of the record sealed.
 7              Mr. Rosen, I just want to ensure, are you -- you were
 8    privately retained, sir?
 9              MR. ROSEN:  I was, Your Honor.
10              Your Honor, may I make one small correction to my
11    motion just -- it's a factual issue.  In Paragraph 1, I
12    indicate Mr. Muho was arraigned in the Eastern District of New
13    York.  He was arraigned here in the Southern District of
14    Florida.
15              THE COURT:  All right, sir.
16              THE DEFENDANT:  Your Honor --
17              THE COURT:  And Mr. Muho, let me just allow Mr. Rosen
18    to speak because he is asking for leave to withdraw and I want
19    to address the basis of that motion.
20              MR. ROSEN:  Your Honor -- thank you, Your Honor.
21              I tried to put everything in the motion.  Mr. Muho has
22    a copy and we put a copy in the federal prisoner mailbox on the
23    same day as we filed it and also sent a copy to his family, and
24    I know they discussed the matter.
25              Judge, I like Mr. Muho.  There has been a complete,
```

total cessation of communication about the case, about the discovery, about the -- any plea discussions. I have never had a client say to me: "I don't trust you," and that's okay. This is not a personal issue in that regard. I respect Mr. Muho. But my entire career has been built on trust with clients. That's all there is. And I respect his candor with me. And if the Court were to look at it, the Court would see that several weeks before was the beginning of the -- of this dissipation of communication.

I didn't file the motion at that time. And let me just steer the Court, just so -- Paragraph 6 is when my associate, who is in court in case the Court has any questions of him, went to see Mr. Muho within three days of our receiving four DVDs and brought them with him. And Mr. Muho did not want to and refused to review them. And I went in the next day and had the same result. Perhaps I could have filed a motion at that time, but I felt like if I gave this a couple weeks then we could talk and so on.

What I didn't include in here, which the Government's fully aware of, but I just didn't want to put it in writing, is that we did -- Mr. Muho and I did meet with Government prosecutors, one out of the Department of Justice -- well, primarily she came down and met with him in an effort to continue a cooperation effort that Mr. Muho had begun a couple years earlier. I just didn't want to put it in writing here,

1  but I want the Court to be aware of it.
2          And that -- it seemed to go reasonably well.  And I
3  met with both Ms. Shaw out of the DOJ and Mr. McLaughlin after
4  the meeting.  And subsequent to that, when I went back to speak
5  to Mr. Muho on August 2nd to pursue plea discussions, and what
6  could we do, is when he just very abruptly and very succinctly
7  said:  "I don't trust you," and as I put in quotes, Paragraph
8  8:  "You should have withdrawn from this case a long time ago."
9          Judge, there's no way I could proceed.  I would be
10 horribly uncomfortable and I think it would be inviting nothing
11 but problems.  And I wanted to file it right away because of
12 the timing.  We're just getting started in a pretty complex
13 case.
14         So --
15         THE COURT:  And Mr. Rosen --
16         MR. ROSEN:  -- respectfully, I would ask the Court to
17 grant that leave to withdraw.
18         THE COURT:  Thank you.
19         Mr. Rosen, you also stated that Mr. Muho is not able
20 to pay for counsel.
21         MR. ROSEN:  Yes.
22         THE COURT:  Was there a financial inquiry done in this
23 case by the committing magistrate?
24         MR. ROSEN:  No.  Mr. Muho's family, his sister and
25 mother whom I met with, paid an initial retainer to me.  My

```
 1    understanding is that Mr. Muho himself does not have any funds
 2    to hire a lawyer.  I have no idea what his family would be
 3    willing to do or not to do, but I know that that's not the
 4    criteria.
 5              THE COURT:  I understand.  But the retainer or any of
 6    the fees were not paid by Mr. Muho, but voluntarily paid by his
 7    family?
 8              MR. ROSEN:  Yes, ma'am.
 9              THE COURT:  All right.
10              Mr. Rosen and Mr. Muho, the courtroom deputy is
11    advising me that, pursuant to the Rule 5 transfer, there was
12    previously the Federal Public Defender who was appointed in New
13    York, Mia Eisner-Grynberg, before this case was transferred.
14    So there was a determination that Mr. -- I have the Rule 5
15    transfer documents reflecting that the Federal Public
16    Defender's Office was appointed.
17              Mr. Muho, would there be any reason why the Court
18    would not grant Mr. Rosen's request based on the failure for
19    you to effectively communicate with your attorney?
20              THE DEFENDANT:  I believe the -- Your Honor, I believe
21    the motion should be granted; however, I believe that it should
22    be granted on different grounds and I would like to also
23    correct a few -- a few incorrectness -- incorrect statements
24    made on the -- in the motion as to the facts and otherwise,
25    that some of them even affect my case, I would say.
```

1       Oh, go ahead?

2       In Paragraph 1 -- this is not a big one, but it says that I was charged with 17 counts of mail fraud. I believe that is bank fraud and not mail fraud.

5       In Paragraph 2 in the motion -- states that on May 29th, Michael -- Mr. Rosen met with Defendant that day and his family the evening of the 29th. That is incorrect. He did not meet with me. He met with my family. He met with me the next day on the 30th as follows. It also wouldn't make sense for him to have met with me and my family, given that I was incarcerated at the time. So that's another one.

12      In the same paragraph -- in the same paragraph, it -- it -- I mean, the following page, it says that: "With other counsel and waived his preliminary hearing." That is completely utterly untrue. I did not waive my preliminary hearing. In fact, I actually wanted my preliminary hearing, but did not get it.

18      In the next paragraph, on Paragraph 3, it says that the trial in this matter has once been continued unopposed. This was done without my permission or knowledge or desires, and it went completely against my instructions previously given to Mr. Rosen that I wanted trial to be as quickly as possible, given that -- you know, given that I believe the evidence would show that I'm an innocent man being incarcerated at the time, being right now -- or there is also lack of evidence showing

```
 1   that I have committed any crime at all.  But that's another
 2   matter altogether.
 3            And I very much thank Your Honor for not granting what
 4   they requested, which was six months -- up to six months of
 5   delay in the trial and only granting one month.  Thank you very
 6   much for that.
 7            The next one comes in Paragraph 6.  Paragraph 6 says
 8   that:  "The client refused to discuss the discovery on either
 9   occasion or the case."  I have discussed -- that is -- that
10   is -- that is patently untrue.  I have discussed the discovery
11   ever since the first meeting on May 30th with Mr. Rosen, and I
12   have -- and I discussed -- I have discussed both the case and
13   the discovery matters because I -- I -- I already knew what the
14   discovery would be and I did not wish to waste time, given
15   that -- given that based on the evidence, and based on public
16   records also, the evidence shows that -- and also based on
17   prior court filings I have submitted, most -- some or most --
18   most, actually, I would say -- most have been verified --
19   verified -- verified complaints and affidavits.  All that
20   evidence establishes, in fact, my evidence as a matter of law,
21   I believe it's called in the legal industry.
22            So with that said, there was -- I -- assuming all the
23   discovery was true, that -- that I had discussed -- basically,
24   had established for Mr. Rosen way in advance -- in fact, in my
25   second -- in my first -- second meeting with Mr. Rosen, I told
```

```
 1    Mr. Rosen to get me out of there, out of -- I was in Broward
 2    County at the time in the mental facility and I asked Mr. Rosen
 3    to get me out and I was willing to accept a year or up to two
 4    years in jail, you know, for -- for -- in order just to get
 5    out.  And he asked me repeatedly that day:  "How are you an
 6    innocent man going to be accepting -- pleading guilty to a
 7    crime you did not commit?"  He asked me repeatedly and
 8    visibly -- he was visibly shocked that I was willing to
 9    accept -- to enter a guilty plea to a crime that I did not
10    commit, as I had established for him in the prior meeting and
11    with the documents that he had read since then.
12              That was my second meeting and my last meeting with
13    him as my own attorney.  After that, I believe a conflict was
14    created -- and Mr. Rosen can confirm this, but he never ran a
15    conflicts check in this case or never updated one as -- as
16    time -- as time went by.  So that -- that -- so it -- it is not
17    true that I refused to discuss the case or the discovery or the
18    evidence in this case.
19              And on July -- he -- he updated this, which was that I
20    met with -- with the prosecutor that I had been working with --
21    well, I had been working with a different prosecutor in
22    Washington, DC and with the FBI agents out of Baton Rouge in a
23    hundred-million-dollar theft of three pension funds that I had
24    assisted the Government repeatedly and out of my own free will,
25    at my own risk and expense for that matter.  Before -- we did
```

1  meet with a Government prosecutor from the DOJ and she was
2  very, very nice and everything went very, very well with the
3  discussion.  And I am -- and I can repeat this, as I've been
4  for the past three years, I'm more than happy to help with that
5  case in any way possible, as I have past three years.
6       So that -- that just gives -- giving a little bit of
7  fill-in to that Paragraph 7.
8       I -- on Paragraph 8, it says that:  "I do not trust
9  you.  You should have withdrawn from this case a long time
10 ago."  I never said that I do not trust you.  My correct
11 statement was:  "I -- how do you --" well, first it came in the
12 form of a question.  I asked Mr. Rosen how he was offering me,
13 what he -- what he had called an innocent man, a guilty plea
14 that exposed me to six years of incarceration.  And I asked
15 him:  "How are you offering an innocent man a six-year
16 incarceration plea agreement," and which he did not answer.
17 And then I said:  "I don't see how I could possibly trust you,"
18 which apparently he misheard or misstated in stating that I did
19 not trust him.
20      And I did say that he should have -- that is correct
21 that I stated that he should have withdrawn at the time that
22 the conflict arose in this case, which would have been after my
23 second meeting in Broward and before -- before at the time of
24 the third meeting in Broward.  But that's just ...
25      Also, Paragraph 10, skipping ahead, a plea agreement

1   was rejected.  It was not -- it was not -- it was not -- you
2   know, it was not considered or refused to read or -- it was
3   just outright rejected opting out for trial.  And -- and -- and
4   asking -- I -- at that time, I assumed the trial would be
5   October 1st.  Mr. Rosen informed me that it was September 12th
6   and that -- by showing me an order that Your Honor had entered,
7   which then -- then I reviewed the -- the -- the motion that he
8   had filed together with -- with McLaughlin, Mr. McLaughlin,
9   requesting a leave of three to six months, which I was just
10  outright shocked.  And so that's another one.
11              On Paragraph 12:  "Mr. Muho cannot afford privately
12  retained counsel."  I believe that is patently untrue.  I would
13  be able to afford counsel if I were out.  But I mean, I am --
14  I'm an SEC registered investment adviser of over 120 million in
15  funds.  This is public information, public records with the
16  government.  And I have -- there's a pending case here
17  against -- a racketeering case which is related to this case, I
18  would say.  It's a racketeering case where I was expecting a
19  default judgment to be entered for the value of 9 million.
20  That has been stayed after my incarceration for -- in fact,
21  having supposedly defrauded that RICO organization.
22              So that's -- that's -- while it is true that I cannot,
23  at this moment, while I'm incarcerated, pay for it, it is not
24  true that I would not be able to afford privately retained
25  counsel if I was out or if I was on bond, as I expected

```
 1    Mr. Rosen to request for me.
 2            And that is -- that is it.  So I would request that
 3    Your Honor grant this motion on the grounds of a conflict of
 4    interest as the US v. Garey cited in Mr. Rosen's motion states
 5    that where there is a fundamental problem, such as a conflict
 6    of interest.  I believe that ground exists in this case and I
 7    believe that it should be granted based on those -- on that --
 8    on -- on that ground.
 9            Thank you.
10            THE COURT:  Mr. Rosen, is there anything further, sir?
11            MR. ROSEN:  Only that I'm not sure what conflict of
12    interest it is that Mr. Muho is referring to.  But other than
13    that, no, Your Honor.
14            THE COURT:  Yes.  It's not clear to the Court either.
15            But let me state that for purposes of a determination
16    as to whether court-appointed counsel should be given to
17    Mr. Muho, based on the inquiry that was performed by the United
18    States magistrate judge from the Eastern District of New York,
19    the Court finds that Mr. Muho is unable to hire private
20    counsel.
21            Mr. Muho, as you stated, if you believe that you are
22    able, somehow there are funds that are available to you, then
23    you may certainly hire your own attorney.  But at this point in
24    time, it's the Court's responsibility to make a determination
25    as to whether there are grounds to allow Mr. Rosen to withdraw.
```

1   And the Court certainly finds those grounds are present.
2           In reviewing the motion, it's clear to the Court that
3   there is a complete inability to communicate.  You've admitted
4   so by virtue of refusing to review the discovery when
5   Mr. Rosen's associate came to see you.  Your words were:  "I
6   did not wish to waste time," since you had some paper
7   discovery.  You admitted that you stated:  "I don't see how I
8   could possibly trust you, to Mr. Rosen.  You've admitted that
9   you stated to him:  "You should have withdrawn."  You've
10  admitted that you have refused to fully discuss the extent of
11  any negotiations.  As you've stated, you believed that there
12  would be no reason to discuss it, which clearly tells this
13  Court that the conflict results from a total lack of
14  communication that you are having with your attorney,
15  preventing Mr. Rosen from ensuring that there is an adequate
16  defense on your behalf.
17          So Mr. Rosen, your motion certainly is timely.  The
18  Court has made inquiry and finds that there is good cause and
19  allows you to withdraw and the motion for leave to withdraw is
20  granted.
21          Mr. Muho, the Court is going to appoint a Criminal
22  Justice Act attorney.  And for this week the first individual
23  is Sylvia Pinera-Vazquez.  She will be communicated with
24  through the courtroom deputy and advised that she will be
25  appointed to represent you, and the Court will keep the case on

```
 1    for trial as it is currently scheduled.
 2            The Court orders that this portion of the record be
 3    sealed.
 4            Mr. McLaughlin can certainly come into the courtroom,
 5    but there is nothing further that the Court needs to address
 6    other than this will remain on a path for trial with
 7    Ms. Pinera-Vazquez appointed to represent you.
 8            And Mr. Rosen, the Court will grant that request.  Is
 9    there anything further, sir?
10            MR. ROSEN:  No, ma'am.  Thank you, Your Honor.
11            THE COURT:  Okay, sir.
12            THE DEFENDANT:  Thank you, Your Honor.
13            THE COURT:  If we can bring in Mr. McLaughlin and just
14    let him know that these proceedings are concluded.
15            MR. ROSEN:  Thank you, Judge.
16            Excused?
17            THE COURT:  Yes.  Have a good day, sir.
18       (AUSA Sean McLaughlin enters the courtroom, 11:27 a.m.)
19            THE COURT:  Mr. McLaughlin.
20            MR. MCLAUGHLIN:  Yes, Your Honor.
21            THE COURT:  The Court has allowed the attorney,
22    Mr. Rosen, to withdraw and Ms. Pinera-Vazquez has been
23    appointed to represent Mr. Muho.
24            MR. MCLAUGHLIN:  Very well.
25            Is that CJA, Your Honor?
```

```
 1              THE COURT:  Yes, sir.
 2              MR. MCLAUGHLIN:  Okay.  I'll reach out to her and get
 3    discovery out the door and take care of it.
 4              Thank you.
 5              THE COURT:  Have a good day, sir.
 6              MR. MCLAUGHLIN:  You, too.
 7         (Proceedings concluded at 11:37 a.m.)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   UNITED STATES OF AMERICA      )
 2   ss:
 3   SOUTHERN DISTRICT OF FLORIDA  )
```

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 8th day of August, 2016, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that this transcript contains pages 1 - 16.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida this 24th day of September, 2018.

/s/Yvette Hernandez
Yvette Hernandez, CSR, RPR, CLR
Certified Shorthand Reporter
400 North Miami Avenue, 10-2
Miami, Florida 33128
(305) 523-5698
yvette_hernandez@flsd.uscourts.gov